UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREGORY REGINALD JYNES

VERSUS

ORLEANS PARISH SHERIFF'S
OFFICE, ET AL.

CIVIL ACTION

NO. 25-1062

SECTION "O"(3)

## REPORT AND RECOMMENDATION OF PARTIAL DISMISSAL

Plaintiff Gregory Reginald Jynes, a state pretrial detainee confined at the Orleans Justice Center, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983 against the Orleans Parish Sheriff's Office, Orleans Parish Justice Center, Colonel Giovingo, Sheriff Susan Hutson, Assistant Sheriff Ahmad, Classification Officer Duncan, Lieutenant Brown, Captain Michael Lewis, Captain Jones, SRT Officer Patton, Sergeant Dunn, SRT Officer Harris, Pod Officer Williams, Pod Officer Stevenson, the "Medical Department," Deputy Rodriguez, and John Doe Classification Officers claiming that his constitutional rights were violated in multiple ways over a period of five months.[1] The Court ordered Jynes to provide further information with respect to his numerous claims.[2] Jynes filed a response to the order and provided further information with regard to the roles of some of the defendants in various incidents.[3] Having considered the record, *Spears* hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

---

[1] R. Doc. 4.
[2] R. Doc. 9.
[3] R. Docs. 12 and 12-1.

I.    **Background**

A. **Factual Allegations in the Complaint and Supplement**

Jynes is a pretrial detainee incarcerated at the Orleans Justice Center. Jynes alleges that, sometime prior to January 30, 2025, Captain Lewis sent an email to the classification department advising that Jynes could not be housed in Tier 2E due to known threats and safety concerns.[4] Jynes claims that he spoke to Officer Duncan on several occasions and told her that he was safe on Tier 4B, but she claimed that he had enemies on that tier.[5] Jynes further claims that he spoke with Lieutenant Brown, told her that he feared for his life if he was moved from Tier 4B, and requested that he be placed in segregation or protective custody.[6] Brown temporarily placed Jynes in segregation but, due to overcrowding, sent him back to Tier 4B.[7]

Jynes claims that on January 30, 2025, Colonel Giovingo and Officer Duncan ignored Jynes's concerns about his safety and ordered him moved from Tier 4B to Tier 2E.[8] He asserts that Captain Lewis carried out the move despite knowing the concerns and the risks associated.[9] Shortly after he was moved, other inmates stabbed Jynes multiple times, and his personal property was stolen.[10]

After the January 30, 2025 incident, Colonel Giovingo placed Jynes in

---

[4] R. Doc. 4-2 at 4.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] R. Doc. 4 at 4; R. Doc. 12 at 1–3.
[9] *Id.* at 3.
[10] R. Doc. 4 at 4; R. Doc. 4-2 at 1, 3–5; R. Doc. 4-4 at 2–3; R. Doc. 12-1 at 1, 3.

protective custody with a "known hostile inmate."[11] Jynes alleges that he warned Sergeant Dunn of "tensions with his new cellmate" and concerns for his safety, but she ignored him.[12] Jynes filed a grievance stating that he did not feel safe in his protective custody housing and requesting to be returned to Tier 4B.[13] Jynes claims that Officer Duncan refused his request.[14] On February 4, 2025, Jynes and his cellmate got into a fight.[15] Jynes never received a response to his grievance.[16]

On April 6, 2025, Jynes submitted a grievance requesting an investigation of the January 30, 2025 incident and return of his personal property, but he never received a response.[17] On April 16, 2025, while still in protective custody, during a two-hour time out period, Jynes was placed in the same group as one of the inmates involved in his stabbing.[18]

On May 13, 2025, Jynes fainted after SRT Officer Harris discharged mace at another inmate.[19] Jynes was not provided with a shower, clean clothes, or bedding for approximately 48 hours thereafter.[20] That evening, he was denied medication during pill call.[21]

On May 14 or 15, 2025, Jynes requested the Officer Williams give him isolation

---

[11] R. Doc. 4-4 at 3; R. Doc. 12-1 at 2.
[12] R. Doc. 4 at 5; R. Doc. 12-1 at 4.
[13] R. Doc. 4-2 at 1; R. Doc. 4-4 at 11.
[14] R. Doc. 12-1 at 2.
[15] R. Doc. 4 at 5; R. Doc. 4-4 at 3; R. Doc. 12-1 at 2, 4.
[16] R. Doc. 4-4 at 11.
[17] R. Doc. 4-2 at 3; R. Doc. 4-4 at 14.
[18] R. Doc. 4-4 at 3.
[19] *Id.*
[20] *Id.*
[21] *Id.*

or separate time out, which was denied.[22] Also on that day, Officer Williams handed out commissary and placed Jynes's food bag on the floor, which was still contaminated with mace.[23]

On May 25, 2025, there was a water/toilet outage.[24] Officer Williams failed to provide Jynes with water or cleaning supplies.[25]

Jynes also very generally claims retaliation, "denial of religious rights (First and Fourteenth Amendment violations)," and denial of access to courts.[26] Jynes seeks monetary damages, a declaratory judgment that defendants violated his rights under the Eighth and Fourteenth Amendments, and injunctive relief requiring Orleans Justice Center to reform classification and protective custody procedures.[27]

### B. *Spears* Hearing Testimony

On November 18, 2025, the Court held a *Spears* hearing in this case. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." *Davis v. Scott*, 157 F.3d 1003, 1005–06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a *Spears* hearing is similar to a Rule 12(e) motion for more definite statement. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). *Spears* hearing testimony becomes a part of the *pro se*

---

[22] *Id.* at 6–7.
[23] *Id.* at 7–8.
[24] R. Doc. 12-1 at 5.
[25] *Id.*
[26] R. Doc. 4-4 at 8; R. Doc. 12-1 at 6.
[27] *Id.* at 9–10.

applicant's total filing. *Id.*

At the hearing, Jynes stated that he intended to sue the defendants in their official capacities.[28] Jynes explained that he spoke to Duncan both before and after the January 30, 2025 incident. Jynes claimed that, despite the fact that he had two enemies on Tier 4B, Lewis did not want him moved because he believed that Jynes was safe on that tier. According to Jynes, Captain Lewis told him that the others, presumably classification officers, "didn't care," he was in the queue, and had to be moved. Jynes said that he was told that unless he could provide names of enemies, he would have to be moved. He admitted that he did not provide the names of enemies housed on Tier 2E, he just knew that it was not a safe choice for him, and he knew it was not the tier on which he should be housed. Jynes explained that Captain Lewis told him that he had been in the queue too long and he had to be moved, but that Lewis would try to "fix it" within a few days.

Jynes testified that, on the day he was moved, Sheriff Ahmad also told him that he was moving as he had been in the queue for too long. Jynes tried to explain the situation to Ahmad, apparently to no avail. Jynes admitted that Sheriff Hutson was not personally involved in the decision to move him from Tier 4B. Rather, about a month later, he emailed her to inform her of the incident.

After the January 30, 2025 incident, he was evaluated by the medical department and taken to the hospital for treatment of his wounds. Jynes testified that

---

[28] As Jynes seeks both monetary and injunctive relief, the undersigned liberally construes Jynes's allegations as both official and individual capacity claims against the individual defendants.

Deputy Rodriguez took him to the hospital after he was stabbed. He clarified that he did not intend to name Rodriguez as a defendant in this case.

When he returned to the jail, Jynes was placed in protective custody. After a few days, Jynes told Sergeant Dunn that he was "getting into it" with his cellmate, and that he did not feel safe. He admitted that he did not advise either Giovingo or Duncan of any issues with his cellmate or his concerns for his safety at that time. Jynes stated that he filed a grievance requesting that he moved back to Tier 4B. He spoke with Dunn on February 4, 2025 about 15 to 30 minutes prior to an altercation with his cellmate, but she did not move Jynes. A short time later, Jynes was engaged in prayer in his cell when his cellmate walked in front of him. The two exchanged words, which then led to a physical fight. The special response team broke up the fight. Jynes did not identify any specific injury as a result of the fight; rather, he stated that, at the time of the fight, he was "still suffering" from being stabbed days earlier, and, after the fight with his cellmate, the pain was worse in "different areas." He also claimed "mental trauma." He could not recall whether he received medical treatment that day, but he recalled that he had been still receiving daily morning care of the stab wounds.

Jynes did not recall which defendants were involved in the April 16, 2025 incident. He admitted that he did not have a physical altercation with another inmate on that day and suffered no physical injury.

Jynes testified that, on May 13, 2025, he and all other inmates, except for one, were in lockdown in their cells. One inmate was in the dayroom and refused to comply

with orders to enter his cell. Due to the inmate's failure to comply with orders, the special response team responded to the scene. Ultimately, Harris discharged mace at the recalcitrant inmate. Jynes admitted that the mace was not discharged at him, but Jynes claimed that he panicked and passed out. Jynes alleged that he had eye irritation and skin burning from the mace fumes. He could not recall whether he requested medical attention. That evening no one conducted pill call, and he was not given his seizure medication.

Jynes testified that on either May 14 or 15, 2025, commissary was passed out and placed on the floor, which he claims was still contaminated with mace. He admitted that he ate the food. Jynes also claimed that, for two or three days, the provided meals were contaminated because of the mace. He admitted that he nonetheless ate at least some of the meals.

Jynes complained that Jones made comments about him to others that the protective custody tier had gotten "hostile" since he was moved on it. He also claimed that she placed more inmates in time out groups than the rules provided.

When questioned about his access to court claim, Jynes testified that the commissary does not have pens available for purchase. He further complained that he does not have access to his criminal court "paperwork" as everything at the jail is electronic and must be accessed on a tablet. He specifically complained that he cannot maintain a copy of his physical discovery from his criminal case. Jynes admitted that he is represented by counsel in his criminal case.

Jynes testified that jail policies or practices related to protective custody and

maximum security classification prevent him from attending religious services, worshipping together with other Muslim inmates, and accessing an Iman. He claimed that he does not have access to religious material because the jail is paperless and the tablet used to access digital copies of religious material has been broken for months. He further testified that he was denied eight to ten of his once-daily meals during Ramadan such that there were days when he could not eat. He claimed that defendants Jones, Giovingo, Williams, Stevenson, and Ahmad were all involved in the violation of his right to exercise his religion.

Jynes advised that he had recently been moved out of protective custody as there was an opening on a tier where he does not have enemies.

## II.    Screening Standards

"There is no absolute right to be allowed to proceed in forma pauperis in civil matters; rather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969). 28 U.S.C. 1915(e)(2) thus directs, in relevant part, that courts "**shall dismiss** [an *in forma pauperis* plaintiff's] case **at any time**" if the plaintiff's complaint fails to state a claim upon which relief may be granted or is determined to be frivolous. 28 U.S.C. § 1915(e)(2).

In addition, because Jynes is incarcerated, screening is also required by 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or

employee of a governmental entity." 28 U.S.C. § 1915A(a).[29] Regarding such lawsuits,

the statute similarly provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). This standard, "when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A complaint fails to state a claim upon which relief may be granted when it lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.    Analysis

Jynes filed this action under 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

---

[29] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress[.]

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

### A.    Orleans Parish Sheriff's Office

While Jynes names the Orleans Parish Sheriff's Office,[30] it is not a proper defendant because it lacks capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure and state law. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person," which is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. The State of Louisiana grants no such legal status to any Parish Sheriff's Office. *Liberty Mutual Insurance Co. v. Grant Parish Sheriff's Department*, 350 So. 2d 236, 238–39 (La. App. 3d Cir.), *writ refused*, 352 So.2d 235 (La. 1977). Thus, the Orleans Parish Sheriff's Office is not a juridical person capable of being sued under § 1983. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued...."). Thus,

---

[30] R. Doc. 4-4 at 1.

Jynes's claims against Orleans Parish Sheriff's Office must be dismissed as frivolous.

###    B.    Orleans Parish Justice Center

The Orleans Parish Justice Center should be dismissed because the jail itself is not a proper defendant. *See, e.g.*, *Trepagnier v. Orleans Justice Center*, No. 21-1796, 2022 WL 468956, at *3–4 (E.D. La. Jan. 20, 2022), *adopted*, 2022 WL 464552 (E.D. La. Feb. 15, 2022). The jail is simply a building, and, as such, is not a "person" within the meaning of § 1983. *Id.*; *see Robinson v. Pinion*, No. 05-6364, 2006 WL 2710443, at *3 (E.D. La. Sept. 19, 2006) ("A detention facility is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983."); *see also Porter v. St. Bernard Parish Jail*, No. 15-5716, 2015 WL 10323883, at *1 n.1 (E.D. La. Dec. 21, 2015), *adopted*, 2016 WL 687655 (E.D. La. Feb. 19, 2016); *Coleman v. Terrebonne Parish Criminal Justice Complex*, No. 13-4325, 2013 WL 6004051, at *5 (E.D. La. Nov. 13, 2013).

###    C.    Medical Department

Jynes's claims against the jail's "Medical Department" also fail as a matter of law. A medical department is not a cognizable defendant entity under § 1983. "[A] prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. June 9, 2008) (citations omitted); *see Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the

Medical Department is a legal entity amenable to suit ....").[31] Instead, a § 1983 action must be filed against an actual identified person, not a department or general staff group at the jail. *See Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citation omitted); *Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n. 8 (E.D. La. Feb. 2, 2006) ("Medical Staff" is not a juridical entity capable of being sued; the specific medical personnel must be named).

Accordingly, Jynes's claims against the "Medical Department" should be dismissed.

### D. Deputy Rodriguez and SRT Officer Patton

Jynes testified at the hearing that Deputy Rodriguez merely accompanied him to the hospital on January 30, 2025, and that he did not intend to sue her. With regard to SRT Patton, Jynes testified that his sole role in the events alleged is that he vomited as a result of mace being sprayed on May 13, 2025.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo v. Goode*, 423 U.S. 362,

---

[31] *See Smith v. Lafourche Parish*, No. 21-1714, 2021 WL 4975698, at *2 (E.D. La. Sept. 30, 2021) ("discrete departments of prison facilities are simply not considered to be 'persons' under § 1983."), *adopted*, 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *Jiles v. Orleans Parish Prison Medical Clinic*, No. 09-8426, 2010 WL 3584059, at *2 (E.D. La. 2010) ("[a] jail's medical department simply is not a juridical entity capable of being sued"); *Brewin v. St. Tammany Parish Corr. Ctr.*, No. 08-0639 2009 WL 1491179, at *2 (W.D. La. May 26, 2009) (§ 1983 action against the prison medical department dismissed because the department is not an independent entity capable of being a party to a lawsuit).

363 (1976); *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed."). Further, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

As Jynes does not allege conduct by either defendant resulted in a violation of his constitutional rights, any claims against Deputy Rodriguez and SRT Patton should be dismissed.

### E.    SRT Officer Harris

Jynes testified that SRT Harris discharged mace at another inmate who had failed to obey orders to return to his cell on May 13, 2025. Jynes candidly admitted that he was in his cell and was **not** involved in the incident, and that Harris did **not** discharge mace at him. Instead, he claimed that he experienced the effects from the chemical spray. Jynes claimed that he panicked and fainted, had eye irritation, and burning skin.

It is well-established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Pretrial detainees have a due process right under the Fourteenth

13

Amendment to be free "from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 400 (2015). Punishment "can consist of actions taken with an 'expressed intent to punish.'" *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). But even "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 561). To meet this standard, the pretrial detainee must show that "the force purposely and knowingly used against him was objectively unreasonable." *Id.* at 397. To determine whether an officer's use of force was objectively reasonable, courts look to the "facts and circumstances of each particular case." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.*

Initially, here, Jynes candidly admits that the force was not used against him. Rather, the mace was discharged at another inmate, who was not in Jynes's cell, when that inmate refused to follow orders to return to his cell. Nor does Jynes allege that Officer Harris intended or acted in a way to punish Jynes as a pretrial detainee. He

suggests no ill-motive on the part of Harris. In fact, Jynes does not allege any interaction with Harris during the incident.

Regardless, even if Harris's use of force could be found to be directed, in part, at Jynes's, Jynes admits that the other prisoner was causing a disruption and failed to comply with orders. A prisoner's "flagrant disobedience," if ignored without consequence, is sufficient disruption of prison order and security to warrant the use of reasonable force, including use of chemical spray. *Martin v. Seal*, No. 11-726, 2014 WL 2890125, at *6 (E.D. La. June 25, 2014); *see Vizcayno v. Michael Unit*, No. 6:18cv440, 2020 WL 5536504, at *9 (E.D. Tex. July 26, 2020) (the use of pepper spray to subdue a recalcitrant prisoner was reasonable), *adopted*, 2020 WL 5534579 (E.D. Tex. Sept. 14, 2020).

Furthermore, to prevail on a claim for damages under § 1983, Jynes must have suffered more than a *de minimis* injury. *See* 42 U.S.C. § 1997(e). Here, Jynes's alleged injuries as a result of the overspray of the mace are not more than *de minimis*. *See Bradshaw v. Unknown Lieutenant*, 48 F. App'x 106 (5th Cir. 2002) (affirming district court's dismissal as to an excessive force claim wherein prisoner complained of "burning eyes, and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritations of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace," finding that the prisoner "has not shown that he suffered more than a *de minimis injury*"); *Hammond v. South Carolina Dept. of Corrs.*, No. 4:06-3357, 2007 WL 2822394, at *4 (D.S.C. Sept. 25, 2007) (eye, skin and throat irritation from use of mace in neighboring inmate's cell are

not serious or significant physical injuries).

Accordingly, the Jynes's § 1983 claim for excessive force against Harris should be dismissed.

## F.      Protective Custody and Failure to Protect

"[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." *Hare v. City of Corinth, Miss*, 74 F.3d 633, 650 (5th 1996). Thus, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Jynes in this case. *Hamilton v. Lyons*, 74 F.3d 99, 104 n.3 (5th Cir. 1996); *Hare*, 74 F.3d at 650.

To the extent Jynes asserts that he had a right to be housed in protective custody, segregation, or any particular custodial classification, based solely on his request, he is incorrect. *See, e.g.*, *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Doss v. Calfee*, No. 07cv53, 2008 WL 112109, at *6 (E.D. Tex. Jan. 9, 2008); *see also Mozee v. Crowley*, 188 F. App'x 241, 242 (5th Cir. 2006). Rather, as the United States Fifth Circuit has explained:

> Classification of prisoners is a matter left to the discretion of prison officials. *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983). As pointed out in *Wilkerson*, "[i]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *Wilkerson*, 703 F.2d at 911, citing *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979). Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification. *Id.* Prison officials should

> be accorded the widest possible deference in the application of policies and
> practices designed to maintain security and preserve internal order. *Bell
> v. Wolfish*, 441 U.S. 520, 547 (1979).

*McCord v. Maggio*, 910 F.2d 1248, 1250–51 (5th Cir. 1990). Jynes cannot state a claim
for relief against any defendant for merely declining a request to be moved, nor a
request to remain in particular housing, without something more.

In this case, the something more is Jynes's constitutional right to be protected
from violence at the hands of another inmate. *See Leal v. Wiles*, 734 F. App'x 905, 909
(5th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)) (discussing
the prison officials' duty to protect inmates and detainees); *Hare*, 74 F.3d at 650. To
state a § 1983 failure-to-protect claim, Jynes must allege that "he was incarcerated
under conditions posing a substantial risk of serious harm and that prison officials
were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d
322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).
To satisfy the deliberate indifference element, the plaintiff must allege that the
defendants "(1) were aware of facts from which an inference of an excessive risk to the
prisoner's health or safety could be drawn and (2) that they actually drew an inference
that such potential for harm existed." *Rogers v. Boatright*, 709 F.3d 403, 407–08 (5th
Cir. 2013). Thus, Jynes must allege that the official not only knew of and disregarded
an excessive risk to inmate health or safety but that he also drew that inference.
*Farmer*, 511 U.S. at 837. The risk of assault cannot be just any risk but must be
"excessive." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). This is because
"[p]rison officials are not ... expected to prevent all inmate-on-inmate violence."

*Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

An inmate pursuing a claim for failure to protect may prove it by showing that the defendants knew of a specific threat to him but failed to take measures to protect him from it. *Farmer*, 511 U.S. at 843. In the absence of a specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Carp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials allow "a pervasive risk of harm" and "fail[ ] to take reasonable steps to prevent the known risk." *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. Negligence, however, on the part of the prison officials does not rise to the level of a § 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that he should have perceived, but did not. *See Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

### 1.  **January 30, 2025**

Jynes admitted that Sheriff Hutson was **not** personally involved in the decision

to move him to Tier 2E. He further admitted that he did not email her about the incident until about a month after the incident. As such, he does not present a viable failure to protect claim against her.[32] *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018) (explaining that prisoner's failure "to allege [defendants] were aware of facts from which the inference could be drawn that [prisoner] was exposed to a substantial risk of serious harm" was fatal to his failure-to-protect claim).

With regard to Giovingo, Duncan, Brown, Lewis, Ahmad, Jynes testified that he spoke to them before he was moved to Tier 2E and expressed his concerns for his safety because he knew he had enemies on that tier. He further claimed that Lewis sent an email stating that he should not be moved as he had enemies on Tier 2E and that Lewis felt that Jynes was safe on Tier 4B. Jynes testified that the defendants "didn't care," and told him that he had been in the queue too long, and that he had to be moved. Shortly after the move, Jynes was stabbed by other inmates and injured. Accepting these allegations are true, the defendants allowed Jynes to be housed in conditions that posed a substantial risk of serious harm. *See Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019) ("[The plaintiff] sustained a serious head wound[ ], so his injury meets the first requirement of the *Farmer* standard.").

As for the second requirement, it is true that "[a] prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the

---

[32] The mere fact that Sheriff Hutson is the supervisor of the other defendants is not sufficient to allege personal involvement. *See Thompson*, 245 F.3d at 459 (supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability).

official that such information presents a substantial risk of serious harm to the inmate." *Williams v. Management & Training Corp.*, No. 16-37, 2017 WL 8793429, at *3 (S.D. Miss. Nov. 2, 2017) (citing *Coleman v. Tann*er, No. 09-7346, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010), *adopted*, 2010 WL 2009081, at *1 (E.D. La. May 19, 2010)). Even still, a prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. Thus, while Jynes did not provide defendants with the names of the inmates he feared on Tier 2E, his allegations that both he and Lewis told defendants that Jynes had enemies on the tier and that he would not be safe, coupled with the defendants' alleged statements that they "didn't care," and Lewis's alleged statement that he would try to "fix" Jynes's housing within a few days, is sufficient to state a claim at this stage.

The undersigned recommends that Jynes's federal civil rights claim for failure to protect on January 30, 2025 against Giovingo, Duncan, Brown, Lewis, and Ahmad in their individual capacities be allowed to proceed at this time pending further development.

### 2. February 4, 2025

While Jynes originally claimed that defendants Giovingo, Duncan, and Dunn failed to protect him from violence by his cellmate on February 4, 2025, at the hearing, he admitted that he did not advise Giovingo or Duncan that he and his cellmate were having issues or that he did not feel safe. Jynes testified that he spoke solely to Dunn

on several occasions and advised that he and his cellmate were "getting into it" and told her that he did not feel safe.

Jynes does not allege facts showing that Giovingo and Duncan were personally aware that his cellmate posed a substantial risk of serious harm to him and deliberately disregarded that risk. As such, his February 4, 2025 claim against them in their individual capacities for failure to protect should be dismissed. *Vela*, 728 F. App'x at 287.

With regard to Dunn, Jynes alleges that he advised her that he and his cellmate were "getting into it," and that he did not feel safe. Nonetheless, Jynes is not entitled to proceed against Dunn on this claim because he has not alleged more than a *de minimis* injury. When specifically questioned about any resulting injury from the physical altercation with his cellmate, Jynes merely stated that he had "worse" pain "in different areas," and suffered mental trauma. He did not recall whether he sought and received medical attention after the incident. Temporary pain does not meet the requirement under § 1997e(e). *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (stating temporary pain stemming from numbness and tenderness in left hand and arm insufficient to establish more than *de minimis* injury); *Stinson v. Edwards*, No. 12-0404, 2012 WL 3028145, at *12 (E.D. La. June 20, 2012) (complaint that shove caused non-specific "additional pain" was considered *de minimis*), *adopted,* 2012 WL 3026579 (E.D. La. July 24, 2012); *Taylor v. Dallas Cnty.*, 3:20-CV-3021-M-BK, 2021 WL 5774389, at *3 (N.D. Tex. Nov. 9, 2021) (complaints of aches and pain and swollen jaw, which made it difficult to chew, resulting from an attack by another prisoner were

*de minimis* and failed to satisfy the physical injury requirement), *adopted*, 2021 WL 5771216 (N.D. Tex. Dec. 6, 2021).

Accordingly, Jynes's allegations fall short of the physical injury required to recover on a § 1983 claim under the parameters of § 1997e(e). His claim against Dunn in her individual capacity should be dismissed.

### 3. April 16, 2025

Jynes could not recall who was involved in the April 16, 2025 incident in which he alleges a failure to protect him from an inmate who was involved in the January 30, 2025 attack. "Personal involvement is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382. As Jynes has not alleged that any of the defendants were personally involved in the alleged failure to protect, he fails to state a claim. Regardless, Jynes admitted that he did not have a physical altercation with the inmate on April 16, 2025. He further admitted that he did not suffer any physical injury. Rather, he claimed "mental trauma" as a result of being in the vicinity of the other inmate. Absent a "physical injury resulting from the prison officials' purported failure to protect," a failure to protect claim fails. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

Accordingly, Jynes's April 16, 2025 failure to protect claim should be dismissed.

### G. Missing Personal Property

Jynes's loss of property claim is not actionable under § 1983 for the following reasons.

A state actor's negligence that results in an unintentional loss of property does not violate the Constitution because negligence is not actionable under § 1983. *See Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) (per curiam); *see also Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995) (concluding negligence is not actionable under § 1983). Further, an intentional deprivation of personal property likewise does not state a viable constitutional claim if the prisoner has access to an adequate post-deprivation state remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam) (citations omitted) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally."). Louisiana law provides an inmate with an adequate post-deprivation remedy through its expansive tort laws. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Bennett v. La. Dept. of Pub. Safety & Corrs.*, 61 F. App'x 919, 2003 WL 1109690, at *1 (5th Cir. 2003); *Arnold v. Inmate Accounts*, 48 F. App'x 105, 2002 WL 31017153, at *1 (5th Cir. 2002). Thus, Jynes's alleged deprivations of personal property does not implicate constitutional due process concerns as state law provides an adequate post-deprivation remedy. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."); *Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional deprivations); *Parratt v. Taylor*, 451 U.S. 527 (1981) (unauthorized deprivations).

In short, an official's actions—whether negligent or intentional—that result in

a loss of property give rise to a state tort action rather than a federal civil rights claim. Accordingly, this claim should be dismissed.

### H. Verbal Insults by Jones

Jynes's claim for verbal insults by Jones fails because § 1983 does not recognize a claim for verbal insults. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1994) ("Mere allegations of verbal abuse do not present actionable claims under § 1983. '[A]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983))); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) (Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct results in a constitutional deprivation."). "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment ...." *David v. Assumption Parish Police Jury*, No. 02-765, 2003 WL 57039, at *3 (E.D. La. Jan. 6, 2003) (quoting *Jackson v. Liberty Cnty.*, 860 F. Supp. 360, 363 (E.D. Tex. 1994)).

Therefore, Jynes's individual capacity claim for verbal insults by Jones should be dismissed.

### I.   Failure to Follow Jail Procedures/Policies & Grievances

Jynes cannot succeed on his claims alleging failure to follow jail and/or Department of Correction policies and procedures. A plaintiff is not constitutionally entitled to have the prison follow its own rules. *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (citations omitted).

Nor can he succeed on his claims that defendants failed to act on and/or respond to his grievances. The Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction. *Stauffer v. Gearhart*, 741. F. 3d 574, 587 (5th Cir. 2014) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184–85 (5th Cir. 2006) (concluding that prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor) (citing *Geiger*, 404 F.3d at 373–74). A prisoner has no protected liberty interest in the adequacy or the result of prison administrative grievance procedures. *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Accordingly, these claims should be dismissed.

**J. Access to Courts**

When questioned about his access to courts claim, Jynes testified that there were no pens available through commissary and that he is not allowed to maintain possession of paper documents, such as his criminal discovery.

Inmates clearly have a constitutional right of access to the courts, and that right extends to pretrial detainees. *See United States v. Moya-Gomez*, 860 F.2d 706, 743 (7th Cir. 1988); *Wetzel v. Strain*, No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); *Kirkpatrick v. Daugherty*, No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to

25

encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted).

Significantly, an access to the courts claim is cognizable only if the alleged deprivation resulted in actual prejudice to the plaintiff in his litigation. *See, e.g.*, *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) ("[A]n inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) ("[W]ithout proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim."); *McDonald v. Steward*, 132 F.3d 225, 230–31 (5th Cir. 1998) ("[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts." (quotation marks omitted)); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993). The plaintiff must "demonstrate that the alleged shortcomings ... hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In *Lewis*, the Supreme Court made clear that an inmate **must establish actual injury** to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the *Lewis* case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356.

Jynes does not allege that his ability to exercise his right of access to the courts

for purposes of his civil litigation has been unduly impeded. Further, the record demonstrates that he was able to respond to the notice of deficiency in this case, file a motion for reconsideration of pauper status and a response to the Court's order, and attend the *Spears* hearing.[33]

Jynes has failed to establish that his lack of access to free pens and paper documents interfered with his ability to defend his criminal proceedings. Jynes admitted that he is represented by counsel in his criminal case. A prisoner's right to access courts is satisfied when the prisoner has legal counsel for the underlying claim or cause of action for which he asserts he cannot pursue or defend. *Mendoza v. Strickland*, 414 F. App'x 616, 618–19 (5th Cir. 2011) (affirming district court's decision that plaintiff could not assert his right to access the courts was infringed in relation to his plea deal as he was represented by counsel in that federal case) (citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981) (dismissing a complaint for failure to state a claim because "[a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney.")). Appointment of counsel satisfies a pretrial detainee's right of access to courts for criminal proceedings, and under those circumstances, a pretrial detainee is not entitled to independent access to a law library and legal materials. *Robinson v. Rapides Par. Det. Ctr.*, No. 06-0743, 2006 WL 3533142, at *2 (W.D. La. Oct. 2, 2006) (citing *Caraballo v. Fed. Bureau of Prisons*, 124 F. App'x 284, 285 (5th Cir. 2005)); *Wetzel*, 2010 WL 744993, at *3 (citing cases); *Mitchell v. Gusman*, No. 07-5470, 2008

---

[33] R. Docs. 4, 5, 7, 12, 13.

WL 449650, at *3 (E.D. La. Feb. 14, 2008) (citing *Sosa v. Strain*, No. 06-9040, 2007 WL 1521441, at *6 n.8 (E.D. La. May 22, 2007).

Accordingly, Jynes's 1983 claim relating to the denial of access to courts should be dismissed.

### K. Retaliation

Jynes merely mentions the word "retaliation" once in his complaint.[34] He made no mention of retaliation in his supplement to the complaint.[35] At the hearing, Jynes did not explain which defendants he alleges retaliated against him. Nor did he explain the alleged basis for any retaliation claim.

To prevail on a claim of retaliation, a prisoner must establish (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). Courts must regard retaliation claims with caution, however, as "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must be

---

[34] R. Doc. 4-4 at 8.
[35] R. Docs. 12 and 12-1.

28

regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Newsome v. Fairly*, No. 1:17-cv-280-HSO-JCG, 2019 WL 2496663, at *7 (S.D. Miss. Jan. 28, 2019) (internal quotations omitted) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)), *adopted*, 2019 WL 1128759 (S.D. Miss. March 12, 2019).

In this case, Jynes's allegation falls short of anything more than barebone conclusory statement from which a plausible inference of retaliation cannot be made. "Mere conclusory allegations of retaliation are insufficient[,] ... a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Jynes has not alleged "a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (citation omitted).

Accordingly, Jynes's retaliation claim should be dismissed.

### L. Denial of Medical Care & Decontamination After Mace Incident on May 13, 2025

Jynes complains that he was not given medical treatment and was not permitted to decontaminate himself and his area until several days after the mace incident.

First, Jynes admits that he was in his cell and was not personally sprayed with mace; rather, another inmate, who was not in Jynes's cell, was sprayed. Second, the Fifth Circuit has stated that pepper spray "'[d]econtamination consists primarily of flushing the eyes with water.'" *Hoke v. Anderson*, 799 F. App'x 224, 226 (5th Cir. 2020) (quoting *Wagner v. Bay City*, 227 F.3d 316, 319 n.1 (5th Cir. 2000)); *see Amos v.*

*Jefferson*, 861 F. App'x 596, 602 (5th Cir. 2021) (noting that a nurse explained to a prisoner that the proper method to decontaminate after being sprayed with a chemical agent is to use running water, which was available in the prisoner's cell). Jynes does not allege that he did not have access to water in his cell with which he could wash his body or wash down his cell. Further, "[b]eing pepper sprayed alone is not sufficient to establish an injury or serious need for medical care." *Justice v. Price*, No. 6:23cv016, 2025 WL 2552182, at *5 (E.D. Tex. July 28, 2025) (citation omitted), *adopted*, 2025 WL 2552182 (E.D. Tex. Sept. 3, 2025). Regardless, Jynes does not identify a responsible defendant. *See Jones v. Hosemann*, 812 F. App'x 235, 238–39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

For these reasons, Jynes's claim of denial of medical care and ability to decontaminate after the May 13, 2025 mace incident should be dismissed.

### M. Contaminated Food After Mace Incident

Jynes's claims that his commissary and several days of meals were contaminated after the mace incident do not constitute a violation of his constitutional rights. The Constitution requires that inmates be provided well-balanced meals with sufficient nutritional value to preserve health. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). The deprivation of food, however, does not violate the constitution unless "it denies a prisoner the minimal civilized measures of life's necessities." *Id.* (quotation and citation omitted). It is well settled that an

30

inmate's constitutional rights are not violated if he misses one or even an occasional meal. *Coleman v. Platt*, 558 F. App'x 493, 494 (5th Cir. Mar. 21, 2014) (plaintiff's claim that he missed only one meal did not rise to the level of a cognizable constitutional injury) (citing *Berry*, 192 F.3d at 507, and *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)). Only a "continuous and substantial denial of food" will suffice. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).

Here, Jynes admits that he ate his commissary and at least some of the meals provided during a two-to-three-day period. He alleges no injury because of consuming the food. Further, Jynes's speculation that his food was contaminated in the days after the mace incident is wholly speculative. Mere suspicion and speculation are insufficient to support a plausible claim. *See, e.g.*, *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (to state a claim, "[t]he plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation"). Finally, Jynes does not allege a physical injury as a result of any missed meals after the May 13, 2025 mace incident.

Accordingly, these claims should be dismissed as frivolous.

### N. First Amendment Right to Free Exercise of Religion

Jynes claims that defendants Jones, Giovingo, Williams, Stevenson, and Ahmad violated his First Amendment right to practice the Islamic religion. He claims that jail policies or practices related to protective custody and maximum security classifications prevent him from worshipping with other Islamic inmates, attending services, and consulting with an Imam. He further claims lack of access to written

religious materials, such as the Quran, as the jail is paperless, and asserts that he cannot access a digital copy as the tablet has been broken for months. Jynes also claims that Giovingo ordered that the wrappers be taken off his kosher food causing cross-contamination of the food. He also claims that he was claims that he was denied all food on eight to 10 occasion during Ramadan.

First Amendment protections of free exercise require the government to refrain from interfering with the religious beliefs and practices of individuals. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) ("... the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."). In the context of prisons, however, "this right is subject to reasonable restrictions and limitations necessitated by penological goals." *See Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999).

To evaluate prison practices, the Supreme Court applies certain factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which requires, among other things, that the plaintiff establish that the prison has a policy or practice that unreasonably impinges on the exercise of legitimately held religious belief and the inmate does not have alternative means to exercise his fundamental right. *Id.* at 89–90; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). A prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487–87 (5th Cir. 1987). This general tenet of constitutional law has been upheld even when a regulation prevents Muslim inmates from attending religious services central to their practice. *See O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342, 360 (1987) (holding that prison policy that had the effect of preventing Muslim inmates from attending religious services did not violate the First Amendment). It is not, however, "the court's job to speculate about the concerns underlying the policy," and, as a result, it is not appropriate to dismiss a complaint based on policy justifications at the screening stage. *Johnson v. Jefferson Parish Sheriff's Office*, No. 24-30295, 2025 WL 901682, *3 (5th Cir. March 25, 2025).

The undersigned therefore recommends that Jynes's federal civil rights claims relating to his First Amendment right to free exercise of religion against defendants Jones, Giovingo, Williams, Stevenson, and Ahmad in their individual capacities be allowed to proceed at this time pending further development.

### O.  May 25, 2025 Incident

Jynes complains of a water/toilet outage on May 25, 2025.[36] He specifically complaints of unsanitary conditions where he lived without water or cleaning supplies.[37] The May 25, 2025 incident, which was not included in Jynes's original complaint, clearly occurred after Jynes submitted his complaint on May 20, 2025.[38]

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[36] R. Doc. 12-1 at 2, 5.
[37] *Id.*
[38] R. Doc. 1 at 10; R. Doc. 4-4 at 10.

exhausted." The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

Of import here, 42 U.S.C. § 1997e, clearly requires an inmate bringing a civil rights action to exhaust his available administrative remedies before filing suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). "Congress afforded corrections officials time and opportunity to address complaints internally **before allowing the initiation** of a federal case." *Porter*, 534 U.S. at 525 (emphasis added). "It is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

"[D]istrict courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez*, 702 F.3d at 787–88. District courts "may, sua sponte, 'dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.'" *Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010) (quoting *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)).

Here, it is clear from the face of the complaint and the response order that Jynes could not have possibly exhausted his claim relating to the incident on May 25, 2025 before filing this lawsuit. *See Torns v. Miss. Dep't of Corr.*, 301 F. App'x 386, 388 (5th Cir. 2008) ("One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion."). As above, it is irrelevant

whether Jynes exhausted his claim during this federal proceeding. As he did not exhaust the May 25, 2025 claim before he filed suit, it must be dismissed.

### P. Official Capacity

Neither Sheriff Hutson nor Assistant Sheriff Ahmad, nor any other individual defendant can be liable as a supervisory official under § 1983 pursuant to a theory of *respondeat superior. Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010). A supervisory official is liable for subordinates' actions only if the official implemented an unconstitutional policy that caused the plaintiff's injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1993)).

To the extent Jynes sues the defendants in their official capacities, such a suit is "really a suit against the municipality that employs the defendant[s]." *Rombach v. Culpepper*, No. 16-556, 2018 WL 1202556, at *4 (E.D. La. Mar. 8, 2018) (citing *Monell*, 436 U.S. at 690 n.55). Thus, Jynes's official-capacity claims against defendants are against the Orleans Parish Sheriff's Office itself. To succeed on an official-capacity claim under *Monell*, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quotations and citations omitted).

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th

Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, the plaintiff must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.

Here, Jynes does not allege that Ahmad, Giovingo, Duncan, Brown, Lewis, Jones, Williams, and Stevenson are final policymakers. That is a fatal flaw in any official-capacity claim against them. *See Kimble v. Jefferson Par. Sheriff's Office*, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023); *Hill v. Brown*, No. 3:21-02516, 2022 WL 3094329, at *6 and n. 7 (W.D. July 19, 2022), *adopted*, 2022 WL 3093861 (W.D. La. Aug. 3, 2022*); Salazar v. U.T.M.B. C.M.C.*, No. 5:19-CV-124-BQ, 2020 WL 6556031, at *4 (N. D. Tex. Jan. 27, 2020), *adopted*, 2020 WL5757491 (N. D. Tex. Sept. 28, 2020), *appeal dismissed sub. nom, Salazar v. Linthicum*, No. 21-10610, 2022 WL 3010697 (5th Cir. July 29, 2022). Accordingly, the official-capacity federal civil rights claims asserted against Ahmad, Giovingo, Duncan, Brown, Lewis, Jones, Williams, and Stevenson should be dismissed.

With regard to Sheriff Hutson, Jynes claims that unconstitutional policies or practices implemented by Hutson have resulted in the violation of his First Amendment right to free exercise of religion. As such, Jynes's claim against Sheriff Hutson in her official capacity should be allowed to proceed pending further development. Jynes, does not allege, however, a custom or policy that resulted in the failure to protect him on January 30, 2025. As such, that claim against Sheriff Hutson

in her official capacity should be dismissed.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Jynes's federal civil rights claims against the Orleans Parish Sheriff's Office, Orleans Justice Center, the Medical Department, Deputy Rodriguez, SRT Officer Harris, and SRT Officer Patton, Sheriff Hutson in her individual capacity, and Assistant Sheriff Ahmad Classification Officer Duncan, Lieutenant Brown, Michael Lewis, Captain Jones, Sergeant Dunn, Pod Officer Williams, and Pod Officer Stevenson, in their official capacities, be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Jynes's February 4, 2025 and April 16, 2025 federal civil rights claims for failure to protect, the claims relating to May 13–15, 2025, as well as his claims of access to courts, retaliation, and deprivation for personal property be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Jynes's federal civil rights claims related to the May 25, 2025 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust under 42 U.S.C. § 1997e, but **WITH PREJUDICE** for purposes of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.[39]

**IT IS FURTHER RECOMMENDED that** Jynes's federal civil rights claims

---

[39] If an inmate files in federal court an *in forma pauperis* complaint including claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998); *Johnson v. Gusman*, No. 16-6639, 2017 WL 951954, at *3 n.8 (E.D. La. Mar. 10, 2017).

for failure to protect on January 30, 2025 against Giovingo, Duncan, Brown, Lewis, Ahmad in their individual capacities, and violation of the First Amendment right to free exercise of religion against Jones, Giovingo, Williams, Stevenson, and Ahmad in their individual capacities, and Sheriff Hutson in her individual capacity be allowed to proceed at this time pending further development.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *see Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 7th day of January, 2025.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**